UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

RAYMOND AIGBEKAEN,
*Plaintiff*,

v.

WARDEN *et al.*,
*Defendants*.

No. 3:21-cv-01526 (JAM)

ORDER GRANTING MOTION TO AMEND COMPLAINT
AND INITIAL REVIEW ORDER OF AMENDED COMPLAINT

Plaintiff Raymond Aigbekaen is a sentenced prisoner in the custody of the U.S. Bureau of Prisons (BOP). He has filed an amended complaint against numerous prison officials alleging claims of excessive force, supervisory liability, failure to protect, deliberate indifference to medical needs, and denial of his right to free exercise of his religion arising from his time as a prisoner detained at the Federal Correctional Institution in Danbury, Connecticut (FCI Danbury).

Aigbekaen seeks damages and injunctive relief. After an initial review of the amended complaint pursuant to 28 U.S.C. § 1915A, I conclude that some of his claims may proceed against some of the named defendants but that some of the claims should be dismissed.

### BACKGROUND

Aigbekaen suffers from sleep apnea.[1] For six months, the "administration and named defendants" denied him access to a machine prescribed to treat his condition.[2] When Aigbekaen requested medication to treat his underlying mental illness, the defendants instead forced him to take "sleep inducing medicines."[3] They also "punish[ed] his mental illness" by denying him

---

[1] Doc. #10 at 4.
[2] *Ibid.*
[3] *Ibid.*

phone and commissary privileges.[4] As a result of the sleep medication, Aigbekaen fell from his top bunk and sustained various injuries.[5] Despite knowing that Aigbekaen was on this medication, defendant Bozek refused to place him in the bottom bunk.[6]

At one point, Aigbekaen asked why he was being detained. In response, defendant Gillepsie and two unnamed officers "violently and viciously slammed" Aigbekaen against the wall and "twist[ed] his arm." This caused "serious injury" to his head and dislocated his shoulder.[7]

Aigbekaen further alleges that defendant Allick "expressed a sexual interest in the plaintiff."[8] When he refused, she and defendant Bobens "connived" to deny him access to the phone and law library.[9]

Defendant Lewis would occasionally "grab" Aigbekaen's penis while conducting pat downs.[10] He would also stop Aigbekaen "for no reason" and hold Aigbekaen's penis while stating "let me see how the stick is doing today."[11] Lewis separately told Aigbekaen that if he did not take ivermectin—an antiparastic drug—he would not be allowed to see or talk to his family.[12] The Warden of FCI Danbury "later reiterated this."[13]

Aigbekaen has requested to be put in a "therapeutic environment" for the treatment of his mental illness and to protect him from abuse by other inmates and some officers.[14] Defendants

---

[4] *Ibid.*
[5] *Id.* at 2.
[6] *Ibid.*
[7] *Id.* at 1.
[8] *Id.* at 3.
[9] *Ibid.*
[10] *Id.* at 2.
[11] *Ibid.*
[12] *Id.* at 3.
[13] *Ibid.*
[14] *Ibid*.

Canarozzi, Bozek, and Lewis denied his request.[15] They told him that being sexually abused was a "part of the prison experience."[16]

Finally, defendant Batista and "several of the named defendants" denied Aigbekaen's request to have his prayer rug and religious texts returned to him.[17] Batista also took Aigbeaken's food from him and told him he was not allowed to observe a personal fast.[18] Defendant Durant denied his repeated requests for "sufficient space to perform his prayers."[19]

Aigbekaen filed his first complaint in November 2021.[20] I dismissed without prejudice for failure to show that the defendants were personally involved in the alleged denial of his constitutional rights.[21] Aigbekaen has now filed an amended complaint. He has named as defendants the Warden of FCI Danbury, the BOP Director, Lt. McGregor, Lt. Gillepsie, Lt. Durant, Correctional Officer K. Bobens, Correctional Officer D. Allick, Correctional Officer Batista, Mr. Bozek, Mr. Canarozzi, and Mr. Kenneth Lewis.[22] He seeks compensatory damages and injunctive relief enjoining the BOP director from implementing policies that punish mental illness and ordering his immediate release from custody.[23]

## DISCUSSION

The Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. In reviewing a pro se complaint, the Court must assume the truth of the

---

[15] *Ibid.*
[16] *Ibid.*
[17] *Id.* at 4.
[18] *Ibid.*
[19] *Ibid.*
[20] Doc. #1.
[21] Doc. #9; *see also Aigbekaen v. Warden*, 2022 WL 1658819 (D. Conn. 2022).
[22] Doc. #10 at 1.
[23] *Id.* at 5.

allegations and interpret them liberally to raise the strongest arguments they suggest. *See Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010).

The Supreme Court has set forth a threshold "plausibility" pleading standard for courts to evaluate the adequacy of allegations in federal court complaints. A complaint must allege enough facts—as distinct from legal conclusions—that give rise to plausible grounds for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Notwithstanding the rule of liberal interpretation of a pro se complaint, a pro se complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) (*per curiam*).

I will address Aigbekaen's claims in the order in which he raises them.

### *Excessive force*

To state a claim for excessive force under the Eighth Amendment, "a prisoner must allege that the defendant acted with a subjectively sufficiently culpable state of mind and that the conduct was objectively harmful enough or sufficiently serious to reach constitutional dimensions." *Bradshaw v. City of New York*, 855 Fed. Appx. 6, 9 (2d Cir. 2021) (citing *Harris v. Miller*, 818 F.3d 49, 63-64 (2d Cir. 2016)).

Aigbekaen's complaint satisfies the threshold pleading requirement. It is difficult to imagine that Gillepsie reasonably considered Aigbekaen's question about his detainment to pose a threat. And his response—slamming Aigbekaen against the wall and twisting his arm hard enough to cause injury—was seriously disproportionate to the situation. *See, e.g.*, *Gomez v. Dep't of Corr.*, 2020 WL 6526108, at *4 (D. Conn. 2020). As such I will allow Aigbekaen's Eighth Amendment claim for excessive force to proceed against defendant Gillepsie.

*Supervisory liability*

Aigbekaen also reiterates his claims against the Warden of FCI Danbury and the BOP Director. However, he again fails to allege any particular conduct by either defendant. "[T]here is no special rule for supervisory liability." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). A plaintiff "must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ibid.*

The complaint alleges that the Warden and Director were responsible for policies that punish mentally ill inmates and fail to protect inmates from sexual abuse and violence.[24] But the mere passage of policies does not amount to individual, unconstitutional conduct. *See id.* at 616-17. And so I will dismiss all claims against the Warden of FCI Danbury and the BOP Director.

*Sexual assault*

Aigbekaen additionally claims that Lewis subjected him to unwanted sexual contact. "A corrections officer's intentional contact with an inmate's genitalia or other intimate area, which serves no penological purpose and is undertaken with the intent to gratify the officer's sexual desire or humiliate the inmate, violates the Eighth Amendment." *Crawford v. Cuomo*, 796 F.3d 252, 257 (2d Cir. 2015).

Lewis would "stop the plaintiff for no reason," and "grab and hold" the plaintiff's penis while stating "let me see how the stick is doing today."[25] As described these actions can serve no possible legitimate purpose. Taken in conjunction with his statements, Lewis's goal was plausibly to gratify his own desires or humiliate Aigbekaen. As such I will also allow the Eighth Amendment claim to proceed against Lewis.

---

[24] *Id.* at 2, 4.
[25] *Id.* at 2.

*Unwanted medical treatment*

Aigbekaen next alleges that Lewis forced him to take ivermectin. "A prisoner has a constitutionally protected liberty interest in refusing unwanted medical treatment under the Fourteenth Amendment." *McKenzie v. Obertean*, 2021 WL 5286667, at *1 (2d Cir. 2021). Lewis's threats that if Aigbekaen did not take ivermectin he would be deprived from seeing or talking to his family were significantly coercive and did not provide Aigbekaen a real option to refuse. *See, e.g.*, *Roland v. McMonagle*, 2015 WL 5918179, at *4 (S.D.N.Y. 2015) ("[C]oercion can be mental as well as physical.") (quoting *Blackburn v. Alabama*, 361 U.S. 199, 206 (1960)); *see also Curley v. Dutta*, 2019 WL 2913791, at *3 (E.D. Cal. 2019) ("A coerced agreement to take medication . . . constitutes involuntary medication, even if the method is less extreme than a forced, involuntary injection."). I will therefore allow Aigbekaen's Fourteenth Amendment claim to proceed against Lewis.

*Failure to protect*

Aigbekaen also raises a claim under the Eighth Amendment for failure to protect. "[A]n inmate seeking to establish an Eighth Amendment violation for failure to protect . . . must prove (1) that [the prisoner] is incarcerated under conditions posing a substantial risk of serious harm, and (2) that the prison official had a sufficiently culpable state of mind, which in prison-conditions cases is one of deliberate indifference to inmate health or safety." *Morgan v. Dzurenda*, 956 F.3d 84, 89 (2d Cir. 2020) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)); *Collazo v. Pagano*, 656 F.3d 131, 135 (2d Cir. 2011) (*per curiam*).

Aigbekaen alleges that Canarozzi, Bozek, and Lewis declined his request to be placed in a therapeutic environment. They told him that being sexually abused was "part of the prison experience." While reproachable, the defendants' statements do not evince a subjectively

6

reckless state of mind akin to criminal recklessness. Aigbekaen has not demonstrated that Canarozzi, Bozek, or Lewis knew of and purposefully disregarded a real risk to his safety. *See, e.g.*, *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013); *Hilton v. Wright*, 673 F.3d 120, 127 (2d Cir. 2012) (*per curiam*); *Collazo*, 656 F.3d at 135. Therefore, I will dismiss Aigbekaen's Eighth Amendment claims for failure to protect.

### *Denial of access to telephone and library*

Aigbekaen also alleges that defendants Allick and Bobens denied him access to the phone and to the law library. However, his complaint does not adequately explain how the defendants' conduct impeded his ability to participate in litigation, communicate with a legal representative, or otherwise denied him his constitutional rights. *See Baltas v. Erfe*, 2020 WL 1915017, at *27 (D. Conn. 2020). So I will also dismiss the claims against Allick and Bobens.

### *Deliberate indifference to serious medical needs*

Aigbekaen next alleges that the "administration and named defendants" were deliberately indifferent to his medical needs. They denied him access to his sleep apnea machine and, instead of prescribing medication for his mental illness, they forced him to take sleep medication. To make a claim of deliberate indifference to medical needs, a prisoner must show that "(1) objectively, the alleged deprivation of medical care was 'sufficiently serious,' and (2) subjectively, that the defendants acted or failed to act 'while actually aware of a substantial risk that serious inmate harm will result.'" *Washington v. Artus*, 708 F. App'x 705, 708 (2d Cir. 2017).

Assuming without deciding that Aigbekaen's sleep apnea and mental illness were "sufficiently serious" medical conditions, the plaintiff has not alleged any facts that would satisfy the second prong. Aigbekaen has not alleged "specific conduct by any individual defendant."

*Dorlette v. Butkiewicus*, 2013 WL 4760943, at *19 (D. Conn. 2013). He does not explain who he spoke to about his underlying mental illness, who denied him medication, and whether any of the defendants were aware of a substantial risk to Aigbekaen if they failed to act.

While Aigbekaen does allege that Bozek placed him in the top bunk despite knowing he was taking heavy sleep medication, this does not amount to a showing that Bozek was actually aware that Aigbekaen would suffer substantial harm from the placement. Therefore, I will dismiss Aigbekaen's Eighth Amendment claim for deliberate indifference to serious medical needs.

### *Free exercise*

Finally, Aigbekaen reiterates his free exercise claims. He alleges that he did ask Batista and "several of the named defendants" for his prayer mat and religious texts.[26] Batista also prevented Aigbekaen from fasting, and Durant denied Aigbekaen's requests for sufficient space to perform his prayers.

To establish a violation under the Religious Freedom Restoration Act (RFRA), a plaintiff must demonstrate that he sought to engage in the exercise of religion and that the defendants substantially burdened that exercise. *See Sabir v. Williams*, 52 F.4th 51, 59 (2d Cir. 2022). Aigbekaen has met this standard. The "performance of . . . prayer is undoubtedly religious exercise." *Ibid*. And so is the use of religious articles such as a prayer rug and religious texts. *See Gawlik v. Semple*, 2021 WL 4430601, at *13 (D. Conn. 2021). Prisoners also have a constitutional right to adhere to a diet—or a fast—consistent with their religious beliefs. *See Ford v. McGinnis*, 352 F.3d 582, 590-91 (2d Cir. 2003); *Kole v. FCI Danbury*, 2010 WL 2679981, at *2-3 (D. Conn. 2010).

---

[26] *Id.* at 4.

Batista and Durant allegedly denied Aigbekaen's requests to engage in this protected religious activity. However, Aigbekaen has not alleged any specific conduct on the part of the other "named defendants." Therefore, I will allow the free exercise claims to proceed only against Batista and Durant.

### *Injunctive relief and compassionate release*

Aigbekaen has also renewed his requests for injunctive relief against the BOP Director and immediate release from BOP custody. For the same reasons as identified in my previous initial review order, I will again dismiss those claims. *See Aigbekaen*, 2022 WL 1658819, at *3-4.

## CONCLUSION

In accordance with the foregoing analysis, the Court enters the following orders:

1. The Court GRANTS Aigbekaen's motion to amend his complaint (Doc. #10). The Clerk of Court shall re-open this case and docket the filing at Doc. #10 as the operative complaint in this manner. The issuance of this initial review order has been issued *sua sponte* in accordance with 28 U.S.C. § 1915A and is without prejudice to the right of any defendant to seek relief by way of any motion pursuant to Rule 12 of the Federal Rules of Civil Procedure or other pleadings-level relief.

2. The following claims against the following defendants may proceed: Aigbekaen's Eighth Amendment claim for excessive force against defendant Gillepsie, free exercise claim against defendants Batista and Durant, Fourteenth Amendment claim for unwanted medical treatment against defendant Lewis, and Eighth Amendment claim for sexual assault against defendant Lewis.

3. All other claims and defendants to this action, including those named in the complaint that has been superseded by the current operative complaint, are DISMISSED.

4. The Clerk shall verify the current work addresses for the above-named defendants with the U.S. Bureau of Prisons, mail a waiver of service of process request packet containing the complaint to those defendants at the confirmed addresses **within twenty-one (21) days of this Order**, and report to the Court on the status of the waiver requests by not later than **the thirty-fifth (35) day after mailing**. If any defendant fails to return the waiver request, the Clerk shall arrange for in-person service by the U.S. Marshals Service on that defendant, and that defendant shall be required to pay the costs of such service in accordance with Fed. R. Civ. P. 4(d).

5. All defendants shall file their response to the third amended complaint, either an answer or motion to dismiss, **within sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them.

6. The Clerk shall deliver three copies of the summons and complaint to the United States Attorney for the District of Connecticut, at any one of the three offices, send two copies of the summons and complaint by registered or certified mail to the Attorney General of the United States at 950 Pennsylvania Avenue, N.W., Washington, D.C. 20530, and send a copy of the summons and complaint by registered or certified mail to the Bureau of Prisons at 320 First Street, N.W., Washington, D.C. 20534.

7. The discovery deadline is extended to **six months (180 days) from the date of this Order**. The deadline for summary judgment motions is extended to **seven months (210 days) from the date of this Order**.

8. All motions for summary judgment shall be filed **within seven months (210 days) from the date of this Order**.

9. Pursuant to Local Rule 7(a), a nonmoving party must respond to a dispositive motion (i.e., a motion to dismiss or a motion for summary judgment) **within twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the Court may grant the dispositive motion without further proceedings.

10. If Aigbekaen changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)(2) provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. Aigbekaen must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If plaintiff has more than one pending case, he must indicate all of the case numbers in the notification of change of address. Plaintiff must also notify the defendants or defense counsel of his new address.

11. Plaintiff shall utilize the Prisoner E-Filing Program when filing documents with the Court. He is advised that the Program may be used only to file documents with the Court. As discovery requests are not filed with the Court, the parties must serve discovery requests on each other by regular mail.

It is so ordered.

Dated at New Haven this 6th day of February 2023.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge